May I please the court? Councilman, you may proceed. Van Arbonides on behalf of June Wolverine and this was a case that went to jury trial. She was convicted of both counts as the court is aware and we proceeded to sentencing. The PSR, the judgment was that she had been sentenced to 51 to 63 months. The government moved for an obstruction enhancement of two levels, increased the guideline to 63 to 78 months and unfortunately for Ms. Wolverine the judge gave her a high end of 78 months for defending herself. Well, this was the second time she'd stabbed him in 6 months, right? About 9 months. 9 months, yeah. That is a... Lucky to be alive. But actually, are you proposing to argue about the sentencing first because... Yes, I'd like to, I'd like to. So as to the obstruction question, my understanding is that the judge never decided, he said she was either lying to the FBI investigator or to the, or on the stand and he didn't say which. Is that accurate? Right. He never decided which. He really didn't make a... And would it matter which? Well, the guidelines say it would matter because the guidelines... The standard's different. Yeah, yeah. It's not automatically an enhancement for obstruction in the guidelines if you lie to, not under oath, to an FBI agent. Well, except that he referred it for criminal investigation by the grand jury which presumably is following up on, I mean he did make a finding that she either, she violated 1001 which is making materially false statements to a federal investigator or she committed perjury under oath. Perjury under oath in front of the jury because what she said was so inconsistent that both could not be true. And I think materiality is an issue here. Right. In other words, it's true they couldn't both be true, but she did, and in fact, my understanding of the 1001 question is that you have to actual, at least under the guidelines, is that you have to actually have, there has to have been an actual obstruction. And there has to be actual obstruction and the court... But there wasn't because they went, they didn't stop, they just investigated. No, and in fact, in fact, the first, I mean she, the first stab, she talked about to Agent Kimball two stab wounds. The first one she says was in self-defense. So, and that's the whole focus of this whole case. So, she didn't lie about that. But the jury didn't believe that. That was her defense, but the government's theory was that he was sound asleep when she stabbed him in the chest. And that apparently is the version the jury credited, which was the statement that essentially I think we have to view in the light most favorable to the jury verdict. Well, and even, but the second stab wound is where she told the prosecutor she wasn't telling the truth. The second stab wound was where she had told originally to try to minimize the situation. She said, I stabbed him because I was jealous as he was running out. Well, running to Erica Devereaux's house next door, who climbed into the ambulance with him to ride to the Indian Health Center. Correct. As I understand the question, it's a technical question. Because she said that, even if she was lying then, she couldn't have obstructed justice. In fact, as it turned out, that's exactly why the conviction went ahead. So, she didn't obstruct anything. Exactly. Nothing she said, I think, delayed in any way the prosecution of this case. I'm not sure that's a correct statement of the law. What's your best case that there has to be an actual obstruction of the investigation? I thought the statute said that if you make a materially false statement to a federal officer during the course of an investigation, that is sufficient to violate 1001. Right, but we're talking about a guideline enhancement, 3C1.1, which says that lying to an agent isn't, in and of itself, reason to obstruct. I thought the case law says that you don't have to actually succeed in obstructing the investigation. It says it has to be material, and we're talking about guidelines. But 1001, materiality is an element of 1001, just as it is an element of the perjury statute, is it not? Yes, yes, but we're talking about the sentencing guideline. And the district court found it was either a violation of 1001 or a violation of, what is it, 1653? I can't remember my... Well, it's, the problem we have here is we don't have a good enough record by the court. The court did not focus, I mean, he certainly had problems at trial with this testimony, but we also have to remember what Mr. Tatsy said himself. He said, under oath, I wanted to drop all charges and set the record straight, to tell the right story. But isn't that what the district court referred, the district court was not giving Mr. Tatsy a pass. The district court found that they basically both changed their stories prior to trial and that they both committed perjury, which is why he referred the matter to the grand jury, did he not? He instructed the government, no, no, I mean, there's no, there's been no, as far as I know, any indictment on Mr. Tatsy. We have the tape recording of both Mr. Tatsy's statement to the FBI and Ms. Wolverine's statement to the FBI, and we have their trial testimony, and you can look at them and see that they're totally inconsistent. Right, but one was under oath and one was not under oath, and I think that's... But I'm not sure that gets you off the hook on the enhancement. Well... And the enhancement only applies to her. The guideline says that an example of covered conduct is providing a material false statement to a law enforcement officer that significantly obstructed or impeded the official investigation of the prosecution, i.e., it has to actually significantly obstruct or impede. So is that the relevant language? Yes, yes, and she says right away... It's not 101, it's a different requirement. Exactly, exactly. It's a guideline, and we're not, you know, we're not talking about 1001, and that's why we talk about the commentary of 3C1.1 when we get into the material, is it materially false, and... Well, it doesn't, where's the, yes, it has to be materially false, but it also has to significantly obstruct or impede the official investigation. When the false statement is to a law enforcement officer, when it's perjury on the stand, it has to be material. Right, right. And nothing in the record, at least, demonstrated that, in fact, it substantially impeded Agent Kimball's investigation. To the contrary. She said, she specifically said something that made her prosecutable. Very inculpable. Extremely inculpable. I stabbed this person first time in self-defense, second time... But the only remedy here, I suppose, would be that you get a remand, and the judge would have to say, would have to make a determination as to when she was lying. Well, and I would respectfully, and I'm in front of, I was in front of Judge Haddon a lot when I was, when he was, before he took senior status. And, you know, he's a good judge, and I respect him a lot. And, but I would respectfully ask the court to consider another judge, simply because I think he's already made up his, he made up his mind at trial. He made up his mind at sentencing. Well, but he didn't make up his mind about this. He didn't make up his mind. He specifically didn't. He said she was lying one time, but the other time she didn't say which. Well, true. That's true. But she, I think she, Ms. Wolverine is couched now as a liar either way to Judge Haddon. I understand that, but it matters which one she lied to. I mean, she, so it's really, I mean, because the standards are different, it matters which one she lied to. Right. So it doesn't matter whether she's couched as a liar. She could be a liar as to both things, and that wouldn't affect anything. Well, except it could affect my chance of not getting the enhancement if I was in front of a different judge. That's all. Just to be clear. And your strongest showing on that argument is? No comment. All right. Very well. Anything further, counsel? Just briefly, Your Honor. I know that at trial I did bring this up. I did want to get into the fact that when she did go to the police, she was beaten up by her sisters, or his sisters rather. But didn't she get that in? I'm sorry? It seemed to me that she got in the fact, there was a statement that the sisters came to beat her up, and it was at that point that the judge said, whoa, that's, but he didn't instruct the jury to disregard it. Right, true, true. But then, and no offense to the government, he's a good lawyer, but, you know, on cross with June Wolverine, he said, well, you never pressed charges. You never did this. And I mean, I was pretty much. But her response was, because I didn't think the tribal authorities would do anything. That was in front of the jury, too, wasn't it? Well, right. But I believe at that point. Well, at that point, if she had said something like, because I was afraid I'd get beaten up by her sisters, not only would I be in jail, but she'd be in jail, too, if she mentioned that in front of the jury. Had there been some kind of a pretrial ruling in limine on this issue? Well, the record shows that the judge was threatening to hold me in contempt. And what I'm wondering is, what was not before us on appeal here? Had there been some prior discussion before the trial started? No, no. This was just a question that I asked to her daughter, and I would have liked to have gone into it on redirect with June, and certainly in cross, to bolster my self-defense defense, because I had trouble with the second stab wound. But how does the fact that the sisters came to beat her up bolster her self-defense as to him? Because that second stab wound is important. Up to this point, she never hurt him. As to the issue that you're talking, nobody, as I understand it, everybody understood and agreed that, A, she had been abused by this guy, and, B, that she hadn't reported it much because of that. I mean, wasn't that the common understanding by the prosecutor and everybody else? I think so. So then what does this add? It adds nothing. Well, I mean, when June's being cross-examined, and my hands are strapped, and then when I go to closing, and I really can't say, you know, she really wanted to make sure she got the point across this time not to get beaten up, and that second stab wound was kind of a way to, you know, get the point across. But I don't understand the relevance of one more reason that she wasn't going to the clinic. One more reason. She had plenty of reasons she wasn't going to the police. Well, it's just another reason, another arrow that I could have shot. I mean, who knows? But you're not arguing the 403B. I mean, the 404B. I gather you're not doing that right now. I've done enough trials to know that even though, you know, I wouldn't have liked to have had this testimony in, even though I felt that it's so similar, unfortunately, that it's ‑‑ I guess my point ‑‑ I actually have a hard time with understanding exactly what its relevance is. But I do ‑‑ it doesn't seem ‑‑ it seems likely harmless to me. I was bothered just by the fact that there wasn't a real 403 kind of analysis by the court. Even during trial, we were both kind of wondering where the court was at on this issue. And the court finally said, well, I'm going to let it in, but he never really got into the 403 analysis. And the 403 analysis is an important part of that 404B analysis. Isn't the real problem with her ‑‑ with the evidence here that her story about ‑‑ I mean, she originally said, I went after him essentially for the reason you said, which wouldn't make it self‑defense. And then she has this story that ‑‑ or it was an accident. And then she has a story that says that she ‑‑ it was self‑defense because she reached over his back and ‑‑ As he fell, as he fell. He was kind of on his knees. It seems somewhat implausible. It's quite implausible. Well, it's ‑‑ I found it interesting that the first officer on the scene examined ‑‑ took literally a videotape of every place in the house, but the room that apparently this occurred in, which was his bedroom. And under oath, Mr. Tatsy said that it didn't occur in the bedroom. And, I mean, completely refuted that part. And nobody, even June, when she talked to Agent Kimball, didn't say that it happened in the bedroom. So I don't ‑‑ I mean, you know, that was another question mark,  Thank you. Thank you, Counsel. We'll hear from the government. Good morning, Your Honors. My name is Ryan Weldon, and I'll be appearing on behalf of the United States. I wanted to start specifically with where Mr. Arvanites left off. Why don't we start where he started? I don't understand why he isn't right about the fact that we have to have a determination of which one was a lie because it makes a difference. Yes, Your Honor. And in this case, what happened, and I just want to explain how it progressed and then what Judge Haddon did, just so the Court's aware of those findings. As the trial proceeded, there was evidence that was introduced as to Ms. Wolverine's conversation that she had with Special Agent Kimball. So that is the statement that she made to a federal agent. That statement, and I'll get back to that in a minute because I know that that's what you want to talk about, but then that statement was completely different than what she made when she was on the stand under oath. She made the statement that this was all self‑defense, and one of the things that she had to account for was the stab wound to the buttock that went to the pelvic bone. So under oath, when she was on the stand, she said that she reached over his shoulder, down his back, and then stabbed him in the buttock. What Judge Haddon did is he made the finding, and he made this throughout even prior to the sentencing, even before there was a guilty verdict that was outside the presence of the jury, that these were completely diametrically opposed to each other. One thing, Your Honor, that I think is important is that when Ms. Wolverine was on the stand, I asked her the question of whether or not her statement that she provided to Agent Kimball was material, and she confirmed that that was important. And I didn't use the term material, but certainly that was an important statement. She recognized that. That's in the record at page 355. Now, the one thing that Judge Haddon did do is ‑‑ That's correct, Your Honor. Absolutely. Yes. I just want the court to be aware that there was never any dispute about whether or not that was an important statement. But I read the guideline before. Did I read it correctly? Yes, you did, Your Honor. So material isn't the end of the story? That's correct. Okay. Yes. Go ahead. So in this case, what we have is Judge Haddon, and you were absolutely correct, that there are certain statements that are incorporated into the guidelines for the obstruction, statements to law enforcement officers, and then there are others that are not. Now, perjury, of course, under the obstruction standard, that comes in under any circumstances. So there's no real distinction. So what's your ultimate point, that he did make a decision which it was? What he said is it was either one of them. Right, exactly. So I still don't understand why the answer to the question is we have to know which. And I don't think that you do. Why? Because either qualifies under the guidelines. All right. So let's go to the key question. Why does the statement to the officer qualify under the guidelines? Yes, because you have here that, first of all, the perjury. Then you have, but getting just to the statement to the law enforcement officer, you read it correctly. It's under 3C1.1, and it's note 4G, provides a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution. How did this obstruct anything? She basically said it wasn't self-defense. They went ahead. They had a grand jury. They had a trial. Where was the obstruction? Because there were two people there. She provided the inaccurate account of what occurred, and that was as to ‑‑ I mean, it doesn't have to be specifically as to what occurred. But your current position is that she presented an accurate account of what occurred. Inaccurate account. No, accurate. You're now saying it was accurate, that what she said originally to the officer was accurate. No, I don't believe either one was. But what I'm saying for purposes of argument is that it doesn't matter because either one would have qualified. I'm sorry. What she said to the officer had her acting first in self-defense, and then as he's running out the door, stabbing him, you know, in anger, essentially. That's what she said, yes. That would be ‑‑ that is not self-defense, and that presumably is what was told to the grand jury, and they got an indictment. So how did she obstruct justice? Well, she was ‑‑ what she was saying right from the very beginning is that she was this scorns lover, that she was ‑‑ I mean, surely she had ‑‑ the story she told the police, the FBI, made her guilty, not innocent. That's correct, Your Honor. So how did she obstruct anything? Well, first of all, right from the very beginning statement, when she says that she was stabbing him right at the beginning when she was stabbing him when he was standing, she made an inaccurate statement about that right from the beginning. And that's not material. It wasn't material because what she did say was not self-defense and made her prosecutable as she was prosecuted. That's correct. So what did she obstruct? Well, right from the very beginning, there were only two people who were there, Your Honor. Okay. So what did she obstruct? What's the answer to that question? What did she obstruct? Yes. The investigation. How? Because she's telling inaccurate statements right from the beginning. But it didn't obstruct anything. Well, it impeded the investigation as to the whole encounter. Why? Because one of the things when we're prosecuting cases, Your Honor, one of the things that we have to look at is not just one stab wound. We have to look at the entire case. She makes a statement that this occurred. But it didn't, in fact, obstruct anything. You did, in fact, go ahead. Yes, we did. But at that point, I mean, and this is not in the record, but I will tell the court, we thought that Mr. Tatsy, the victim, would be testifying just as he had originally told the FBI, that he was going to say that he was lying down, that he was sleeping, that she walked in, that she stabbed him. And that didn't occur because they had resumed their relationship by that point. Okay. And that goes to the trial. And you may go back and Judge Hannon or whoever hears this may say it was the perjury at the trial. And then that's a different story. It was a trial that was perjury. Yes, I think that either one qualifies. But, I mean, I understand that the court has a concern. But what Judge Hannon did is he basically said that he didn't need to do either one because either one qualified. And that was clear right from the very beginning of the record, Your Honor. It's not as if he said that this was a close call. He said that either one qualifies. Now, I will tell you — Did he make a finding as to materiality or obstruction as to the statement to the FBI? He did not, Your Honor. Right. So that's another problem. Yes. But, again — He said either one qualified, but he never actually backed that up with anything. And it doesn't seem that it did. Well, and I understand that the court has a concern with the component to the lying to the law enforcement officer. Right. What I want to make clear for the court, though, is that when Judge Hannon made these findings, he had seen the whole case. He had said that either one qualifies under the statute. He had the — Well, he said — what he actually said was she was lying one or the other. Exactly. But he never said — he never really looked at the guideline with regard to the officer and said it qualifies under that. Well, what he did say, Your Honor, is she made deliberately false statements that they were — Right. Which is not adequate. Right. That there were serious issues of credibility. Right. And then he goes on to say, If we boil all of this down to the fundamental principles that are before us, counsel, and I want to be clear with all of you is how I see it. I either have two persons have lied under oath to this court, or by telling a different and conflicting version to an FBI agent, have lied to an FBI agent in the course of his official capacities and duties, either of which is a crime. Then he referred it — But it's not under the guidelines. The second one is not. So his findings were inadequate with regard to the guideline as to this issue. And then he goes on to say that it was the enhanced — so what we argue then is we cite the case to the SWCC case. And it says that requiring application of obstruction enhancement because one of the two statements were false. Right. But that's not adequate either. The fact that one of the two statements was false is not adequate. So there was no finding here. Aside from the fact that he didn't say which, there is no finding that meets the guideline with regard to lying to the FBI. The guideline, not a separate statute. Yes. And I understand that that is your point, Your Honor. But I haven't heard of why it's wrong. Well, because I think that Judge Haddon knew right from the very beginning that it was either one or the other. Ms. Wolverine admitted that it was material. But he misstated the guideline. Counsel, could this ruling be supported by 4B instead of 4G? Are you relying on 4G of the application notes? Yes, Your Honor. I don't have 4B in front of me right now. 4B says, committing, suborning or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense. Yes. And I think that that's what Judge Haddon said. Well, with regard to the testimony, but with regard to the statement, there was no oath, so there wasn't any perjury. The statement to what, Your Honor? To the FBI agent. Oh, to the FBI. Yes, she wasn't under oath when she made the statement to the FBI agent. It could be under 4B if he made that finding, but he never made the finding. So if we remanded this thing, why couldn't Judge Haddon simply say, I find she committed perjury under 4B and give her the same sentence? And that's what he'd do. And he could. He could, but he didn't. Well, I mean, I understand your point, Your Honor, but what I'm telling the Court is that from the very process of the sentencing, he had made the statement that it was either one of those two. And I understand that there isn't a specific finding where he makes the claim. To tell you the truth, I think you should be confessing error here, and we just get it over with and go back. And you're probably right what he would do. Yes. But he didn't do it, and he did not find – he misstated the other guideline. He didn't make a finding under it. He didn't find the facts under it, and he never made a finding that it was perjury under 4B. He just didn't. Then how do we explain the statement that he made? I don't have it directly in front of me, but basically for all the years that he's been a judge, this is the most egregious case he's ever seen, and then he directs the United States Attorney to commence a grand jury investigation. That's exactly right, Your Honor. I mean, that's pretty strong medicine, if the judge doesn't think that this is a significant lie. Yes, Your Honor. And, in fact, Judge Haddon's been there, I think, now for approximately 10 years or so, and that's exactly what he said, is that he'd never seen anything with respect to this egregious, and then he told the U.S. Attorney's Office. That's not the first time he's been lied to by somebody in his courtroom. Exactly, Your Honor. What about the 403B, briefly? The 404B? Yes, I did want to address that with the court. One of the things, and this is something that, as a prosecutor, we always have to deal with where we're getting prepared for trial. We had, and it was nine months, Your Honor, just so that the court's aware of it, there was a stabbing that occurred prior to the actual incident that was prosecuted. What the government did is we filed a 404B notice. That is in the record so that you can see we outlined those factors for the court. Then what happened was we presented evidence on that. Now, Ms. Wolverine and Mr. Tatsy both explained that this was an accident, and what I want the court to understand is that at trial they claimed that this was because Mr. Tatsy was driving around and he drove erratically, and because of that Ms. Wolverine accidentally stabbed him. But what I would refer the court to is the actual record that you have before you, and there were statements that were made, and one of them was Dora Devereaux, and that's at Excerpt of Record 171. And in that Ms. Wolverine admits that she stabbed Mr. Tatsy. She didn't say that it was an accident. She said that that's what you get when you hit women. So it was completely different than what had occurred prior. Now, what she had said when she was on the stand, one thing I want the court to be aware of as well is that we charged two people. I thought she said I should have killed him. She also told the FBI agent that as well. Yes, so she made what the government did is we put it in two different realms, Your Honor. One was the statement from Dora Devereaux. She was the individual who was actually present and saw Mr. Tatsy run up on the stabbing that occurred nine months prior. And then we also have the FBI agent where Ms. Wolverine, during the conversation with him, says that she said she should have killed him. So those were the pieces of evidence that we put in there. Now, the reason why that's important is that we charged assault resulting in serious bodily injury as well as assault with a dangerous weapon. As the court's well aware, assault with a dangerous weapon is a specific intent crime. Ms. Wolverine was claiming self-defense. We needed to make sure that we had established that there was specific intent as it related to the stabbings that she had for Mr. Tatsy. So it was highly relevant for the government to provide that evidence. So that was why we did introduce that. And of course So explain to me, I have some trouble with 404B. Why does the fact that she did this for prove that it wasn't self-defense or indicate? I mean, self-defense is not an absence of intent. Yes, it is. Well, she has intent. The question is what was her motivation? Was her intent created by a danger or not? But the fact that she intended to hurt the person is not an issue in self-defense. She intended to hurt him. Yes, but the point that we wanted to establish is that when she stabbed him, she intended to hurt him. She intended to kill him. And you can see that by the It wasn't really going to the self-defense. No, Your Honor. No. I see what you're saying. You're saying it was because that you dealt with the self-defense separately, but the fact that she intended to hurt him. Yes, exactly. And that's how we dealt with it. And you actually have that evidence with the doctors testifying about the injury, as well as the fact that when we presented it, it was more so that this wasn't a mistake. It wasn't something that was not meant to be done. So it went to a piece of it, but it didn't go to the self-defense. That's exactly right. And I just see that I'm almost running out of time. Your time has expired, counsel. Oh, thank you. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Berzon, Tallman